FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

05 APR 12 AM 11: 25

| | |
|---|---|
| AVENTIS PHARMACEUTICALS, INC., a Delaware corporation, and ZLB BEHRING LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>AMERIPLEX NORTHWEST PARTNERS, L.P. d/b/a THE HOLLADAY GROUP, an Indiana limited partnership,<br><br>Defendant. | Case No. **2:05CV130** |

## COMPLAINT

Plaintiffs Aventis Pharmaceuticals Inc. ("Aventis") and ZLB Behring LLC ("ZLB'), by and through their attorneys McDermott Will & Emery LLP, state as their Complaint against defendant Ameriplex Northwest Partners, L.P. d/b/a The Holladay Group ("Holladay") as follows:

### PARTIES

1.  Aventis is a Delaware Corporation, with its North American headquarters located in Bridgwater, New Jersey. Aventis is a pharmaceutical company, which discovers and develops innovative prescription drugs and human vaccines.

2.  ZLB is a Delaware limited liability company, formerly known as Aventis Behring LLC. ZLB is engaged in the business of manufacture, sale and distribution of biological therapies and operates worldwide from headquarters in King of Prussia, Pennsylvania.

3.  At all times relevant to the events described herein, ZLB was known as Aventis Behring LLC and was a wholly-owned subsidiary of Aventis. In April, 2004 Aventis Behring LLC was purchased from Aventis and renamed ZLB Behring LLC.

4. Holladay is an Indiana limited partnership, whose general partner is Holladay Partners – Midwest, Inc. Holladay is in the real estate business and is primarily involved in commercial real estate development.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, exclusive of interests and costs, and the lawsuit is between diverse citizens.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the events giving rise to the claim occurred in this judicial district.

## BACKGROUND

7. Holladay owns approximately 6.75 acres of vacant land located at the southeast corner of Ameriplex Drive and Daniel Burnham Drive, 6465 Ameriplex Drive, in Portage, Indiana.

8. On or around March 25, 2003, Aventis entered into a five-year Lease Agreement ("Lease") with Holladay. A copy of the Lease and its incorporated attachments, including the Work Letter, is attached to this Complaint as Exhibit A. Aventis agreed under the Lease to lease a portion of the one-story, freestanding building Holladay planned to develop on the site, which would contain approximately 72,000 rentable square feet ("the Ashland Building").

9. The completed Ashland Building was to be "delivered" to Aventis on October 1, 2003.

10. At all times, Holladay knew Plaintiffs were pharmaceutical companies who "intend[ed] to [h]andle [h]azardous substances on the premises." (Lease at 15).

11. The Ashland Building was to be constructed pursuant to the Work Letters attached to and incorporated into the Lease. (Lease at 3-4).

12. Holladay was responsible for "designing and constructing" the Ashland Building in accordance with plans and specifications by both Aventis and Holladay. (Work Letter at 1).

13. Holladay selected and hired a "construction manager/general contractor." (Work Letter at 1).

14. Building requirements set forth in the Work Letter included the specifications for the installation of a functioning fire sprinkler system. (Attachment 1 to Work Letters at 4-5 and Attachment 2 to Work Letters at 10).

15. Construction began on the Ashland Building in May 2003.

16. The fire sprinkler system was installed in the Ashland Building in July and August, 2003.

17. Construction on the Ashland Building was completed in October.

18. On October 15, 2003 a Certificate of Occupancy was issued for the Ashland Building by the City of Portage.

19. On October 28, 2003 final testing of the fire pump and sprinkler system was completed.

20. On November 1, 2003, Aventis and ZLB began storing their pharmaceutical products to the Ashland Building.

21. On December 1, 2003, a sprinkler head in the Ashland Building activated. There was no fire at the time the sprinkler head activated.

22. The water from this sprinkler head sprayed on the Aventis and ZLB products stored near the malfunctioning sprinkler head.

23. Neither Aventis nor ZLB caused the sprinkler to malfunction.

24.   After the sprinkler malfunctioned, ZLB and Aventis quarantined and examined all potentially affected pharmaceutical products and determined that at least $2.8 million dollars of their stored merchandise was damaged and unsalvageable.

25.   On December 2, 2003, the sprinkler head was replaced and the failed sprinkler head was sent to its manufacturer for analysis.

26.   Despite Plaintiffs' best efforts at an efficient and amicable resolution without litigation and despite its obligations set forth in the Lease, Holladay refuses to compensate Plaintiffs for their losses.

## COUNT I
## BREACH OF LEASE

27.   Plaintiffs hereby incorporate and reallege the allegations set forth in paragraphs 1 through 26 as if fully set forth herein.

28.   Under the Lease, Holladay assumed control and responsibility over the construction and maintenance of the Ashland Building, pursuant to the following provisions, covenants and conditions:

> 17(B) **Landlord Representation and Responsibilities.** The Landlord shall be solely responsible for, without reimbursement from the Tenant, all required or necessary maintenance, repairs, additions or replacements (i) required due to defective work or materials, (ii) of a structural nature, or (iii) which relate to the....fixtures and systems within the Building or which serve the Premises....The Landlord hereby represents and warrants to the Tenant that (a) the Building and the Premises, and all systems and equipment servicing them, shall be in good working order and repair on the Commencement Date, (b) the building shall be free from defects in workmanship and materials, and (c) the Building shall comply with the construction documents developed in accordance with the Work Letter and all applicable building codes and other legal requirements....if the Tenant discovers and notifies the Landlord of any breach of any of the foregoing representations and warranties on or before the second anniversary of the Commencement Date, the landlord shall

> promptly repair or replace the work, material or equipment giving rise to such breach.

(Lease at 15).

> 24(B)(ii) **Indemnification**. The Landlord shall *indemnify*, defend and save the Tenant harmless from and against all losses, *liabilities, costs, damages and expenses,* including…attorneys' fees, which be incurred by or asserted against the Tenant by reason of or in respect of any of the following occurring during the Term:
> (a) any work or thing by the Landlord, in on or about the Premises, or any part thereof;
> (b) any … condition, operation, maintenance, or management by the Landlord of the Premises …; and
> (c) any negligence or willful misconduct on the part of the Landlord occurring on the Premises and the Building.

(Lease at 22-23 (emphasis added)).

29. Under the Work Letter, attached to and made part of the Lease as Exhibit C, Holladay was "responsible for designing and constructing" the Ashland Building in accordance with the specifications set forth in the attachments to the Work Letter. (Work Letter at 1).

30. Specifically, the Work Letter set forth Holladay's obligations as follows:

> C(1) Building Shell Construction. ….the Landlord shall, at the Landlord's sole cost and expense, cause the [Ashland Building] to be constructed and completed in a good and workmanlike manner using new materials with such constriction being (i) of first class quality, (ii) in substantial compliance (in a condition such that the tenant may use and operate the Premises…) with the [plans determined between Holladay and Plaintiffs].

(Work Letter at 4).

> (C)(4)(b) Warranties. The Landlord hereby warrants to the Tenant that all work on the Project performed by the Landlord shall be free of defects in construction, materials, equipment and workmanship for a period of one (1) year after the date Landlord's Agents have completed, as determined jointly by the Landlord and the Tenant.

(Work Letter at 5).

31. Attachment 1 to the Work Letter detailed the "performance specifications" for a "fire protection system." (Ex. A).

32. Attachment 2 to the Work Letter contained the "base office standards," including "chrome pendant sprinkler heads with a chrome escutcheon plate on concealed piping" for "fire protection." (Ex. A).

33. Holladay represented and warranted to Plaintiffs that (a) all systems and equipment in the Ashland Building were in good repair, in working order and free from defects; (b) the Ashland Building was free defects in materials and workmanship; (c) the Ashland Building complied with the construction documents; and (d) all work done in the Ashland Building was free from defects in construction, materials, equipment and workmanship (*See* Lease at 15; Work Letter at 5).

34. Holladay did not provide a building and systems which were in good repair, in working order and free from defects. The fire sprinkler system malfunctioned, causing a flood less than a month and a half after a Certificate of Occupancy was issued, and only a month after Plaintiffs began moving their products into the Ashland Building.

35. Holladay represented and warranted to Plaintiffs that it would "indemnify, defend and save [Plaintiffs] harmless for and against all losses, liabilities, costs, damages and expenses" asserted by Plaintiffs for the following: (a) any work done by Holladay in the Ashland Building or on its premises; (b) any condition, operation, maintenance, or management by Holladay of the Ashland Building or on its premises; and (c) Holladay's negligence in the Ashland Building or on the premises. (Lease at 22-23).

36.     Holladay did not indemnify, defend and save Plaintiffs harmless for and against all losses, liabilities, costs, damages, and expenses caused by the sprinkler system activating in the Ashland Building. The malfunctioning sprinkler system was caused by work done by Holladay, was a condition under Holladay's control and was the result of Holladay's negligence.

37.     At all times, Plaintiffs fulfilled their obligations under the Lease including payment of their monthly rent to Holladay for use of the Ashland Building.

38.     Holladay's failure to provide a working fire sprinkler system constitutes a breach of the Lease, and of its warranties and representations to Plaintiffs.

39.     The breach caused in excess of $2.8 million in damages to Plaintiffs.

40.     Pursuant to Section 30(B) of the Lease, if Aventis and ZLB "institute legal proceedings (including appeals) against [Holladay] for breach of any of the covenants in this Lease, then the successful party shall recover reasonable attorneys' fees and expenses from the other." Accordingly, Plaintiffs are entitled to recover from Holladay the attorneys' fees and costs Plaintiffs incur in this litigation.

## COUNT II
## NEGLIGENCE

41.     Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 to 40 as if fully set forth herein.

42.     Holladay was responsible for constructing the Ashland Building. Holladay owed a duty to Plaintiffs to construct the Ashland Building without defects and with good quality materials and services.

43.     As owner of the Ashland Building, Holladay owed to Plaintiffs a duty to keep the building habitable.

44. The fire sprinkler system was not in working order and was not free from defects. The system malfunctioned, causing flooding and water damage to Plaintiffs' property.

45. Holladay breached the duty of care it owed to Plaintiffs.

46. Holladay's breach of its duty of care proximately caused the malfunctioning of the fire sprinkler system only four months after its installation.

47. Holladay knew a malfunctioning fire sprinkler system could damage Plaintiffs' property.

48. The sprinkler failure and subsequent flooding caused extensive damage to Plaintiffs' property resulting in a loss to Plaintiffs in excess of $2.8 million.

WHEREFORE, Plaintiffs ZLB Behring and Aventis pray that this Court enter judgment in their favor and against Holladay as follows:

A. Order Holladay to pay to Plaintiffs compensatory damages in excess of $2.8 million for damages caused to their pharmaceutical products damaged by the failure of the fire sprinkler system in the Ashland Building;

B. Order Holladay to pay Plaintiffs' costs and attorneys' fees incurred in connection with this action; and

C.      Grant such other and further relief, as the Court deems appropriate.

**AVENTIS PHARMACEUTICALS INC. and ZLB BEHRING**

By: _____
Geoffrey A. Vance
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606
312.372.2000

Steven H. Hoeft, P.C.
Shana W. Peretz
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606
312.372.2000

*Pro Hac Vice Admission Application Pending*

CHI99 4424259-4.063122.0012